UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY WAYNE OLIVER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>H. MADSEN, et al.,<br><br>　　　　Defendant. | Case No. 21-cv-00578 EJD (PR)<br><br>**ORDER GRANTING MOTION FOR PARTIAL DISMISSAL OF SECOND AMENDED COMPLAINT; GRANTING MOTION TO STRIKE; SETTING BRIEFING SCHEDULE ON REMAINING CLAIMS**<br><br>(Docket No. 38) |

Plaintiff, a state prisoner, filed a pro se civil rights complaint under 42 U.S.C. § 1983, against officers at the Correctional Training Facility in Soledad ("CTF"), where he is currently housed. The Court granted in part and denied in part Defendants' motion for partial dismissal of Plaintiff's first amended complaint ("FAC"). Dkt. No. 25. The matter was twice referred for settlement proceedings which were unsuccessful. Dkt. Nos. 30, 31, 35, 36.

The second amended complaint ("SAC") is the operative complaint in this action. Dkt. No. 26. With regard to the FAC, the Court granted leave to amend the following claims: (1) the issuance of the September 7, 2019 – RVR by Defendant A. Stephens; and (2) the second mental health referral on December 26, 2019, by Defendant H. Madsen, along with a supervisor liability claim against Defendant Warden Craig Koenig based thereon. Dkt. No. 25 at 34. The SAC alleges the following: (1) an amended retaliation claim against Defendant Stephens; (2) an Eighth Amendment claim against Defendants Mora and Madsen for excessive force (which was found to be cognizable in the FAC); and (3) state law claims for negligence and negligent infliction of emotional distress against

Defendants Madsen and S. Mora based on claim 2. Dkt. No. 26 at 16-18. The SAC does not name Defendant Koenig nor contain any allegations against him. Accordingly, Defendant Koenig should be terminated from this action. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (defendants not named in amended complaint no longer defendants).

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for partial dismissal of the SAC on the following grounds: (1) Defendant Stephens is entitled to qualified immunity on the retaliation claim; (2) Plaintiff otherwise fails to state a claim for retaliation against Defendant Stephens; and (3) the negligence and negligent infliction of emotional distress claims are barred for failure to comply with the California Government Claims Act. Dkt. No. 38. Defendants also assert that Plaintiff's allegations and exhibits regarding other inmates' confidential claims should be stricken under Rule 12(f). Id. Plaintiff filed a "partial non-opposition" to Defendants' motions, challenging only Defendants' argument that his state law claims are barred for failure to comply with the Government Claims Act. Dkt. No. 42. Defendants filed a reply. Dkt. No. 43. For the reasons discussed below, Defendants' motions are **GRANTED**.

## DISCUSSION

I. **Plaintiff's Allegations**

A. **Retaliation by Defendant Stephens**

Plaintiff alleges that on August 10, 2019, he assisted his cellmate, Inmate McCurty, with filing an emergency prison rape elimination act ("PREA") staff complaint. Dkt. No. 26 at 3, ¶ 1. Inmate McCurty's PREA grievance alleged inappropriate conduct by Defendant Madsen during a clothed body search. Id. at 5, ¶ 3. The grievance was filed with the "Hiring Authority," whom Plaintiff "believes" notified Defendants Stephens and Madsen of the grievance against them. Id., ¶ 4. Plaintiff alleges that Defendants were then able to "review and/or get copies of said complaint." Id. Plaintiff alleges that on August 8 and 17, 2019, Defendants Stephens read and processed two of Plaintiff's CDCR Form 22s

2

which he forwarded to Defendant Madsen, and therefore both Defendants were familiar with Plaintiff's handwriting. Id., ¶ 5. Defendant Madsen read these forms, and processed one on August 1, 2019, and returned the other one back to Plaintiff. Id.

On September 7, 2019, Plaintiff sought a pass from Defendants Stephen or Madsen for the afternoon law library session. Id. at 6, ¶ 6. Defendants were conducting a cell search on the second tier of G-Wing at the time. Id., ¶ 7. When it was nearly time for the afternoon session, Plaintiff called out to Defendant Stephens from the ground floor. Id., ¶ 9. In response, Defendant Stephens shouted down to Plaintiff to, "S[i]t down! S[i]t down!" Id., ¶ 10. When Plaintiff protested, Defendant Stephens said, "S[i]t down at the table that's a direct order [*sic*]!" Id., ¶ 12. Plaintiff first ignored the order but eventually sat down at the table a few minutes later. Id., ¶ 13.

On the same day, Defendant Stephens wrote Plaintiff a "false serious rules violation report (RVR) Log No. 0690817." Id., ¶ 15. Plaintiff alleges that Defendant did so in retaliation for Plaintiff assisting Inmate McCurty with his PREA grievance against Defendant Madsen. Id. The RVR charged Plaintiff with "harassment of another person" based on his conduct towards Defendant Stephens while she conducted a cell search that afternoon. Dkt. No. 26-1 at 16. Specifically, Defendant Stephens described Plaintiff "staring at [her] with a lewd and lascivious unsettling creepy smile" and continuing to "leer at [her] in an unpleasant and lustful way that was uncomfortable while maintaining a smirk on his face." Id. When she tried to block his view by closing the cell door halfway, Plaintiff moved so as to maintain a clear view of Defendant Stephens and continued "leering… and licking his lips while staring" at Defendant conducting the cell search. Id. Defendant Stephens reported Plaintiff's sexual harassment/misconduct to her partner and the adjacent housing unit officer whom she asked to escort Plaintiff to a holding cell while she completed the cell search. Id. Plaintiff claims these allegations were "false and misleading." Dkt. No. 26 at 7, ¶ 16. He also asserts that Defendant Madsen was with Defendant Stephens at the time and did not submit any additional supplemental report to corroborate Defendant Stephens' allegations. Id. at 26, ¶ 20.

3

Plaintiff claims that on September 25, 2019, Defendant Stephens approached Plaintiff and stated, "Now that's how you file a mother f*ckin sexual harassment claim" and walked away. Id. at 8, ¶ 18. Plaintiff claims Defendant Stephens was alluding to the PREA grievance he helped Inmate McCurty file. Id., ¶ 19. Plaintiff called Defendant Stephens as a witness at the disciplinary hearing for the RVR on October 9, 2019. Id. at 9, ¶ 21. When Plaintiff asked Defendant Stephens whether he had demonstrated any type of sexual behavior towards her prior to the date of the RVR, Defendant answered, "no." Id. Plaintiff was found guilty as charged and sanctioned with a thirty-day credit loss. Id.

Plaintiff alleges that Defendant Stephens knew that the false RVR would have an adverse effect on Plaintiff's upcoming parole suitability hearing in February 2023, as Plaintiff would have to show that he was disciplinary-free for five years prior to the hearing. Id. at 10, ¶ 24. He alleges that Defendant Stephens' actions did not advance any legitimate correctional goal because the RVR was false. Id., ¶ 26. Plaintiff alleges that during 2019-2020, Defendants Stephens, Madsen, and Mora engaged in misconduct that was "ongoing, wide-spread, [and] pervasive." Id., ¶ 27.[1]

### B. Claims Against Defendants Madsen and Mora

Plaintiff claims that on September 7, 2019, Defendant Mora arrived at G-Wing in response to Defendant Stephens' request for another officer. Dkt. No. 26 at 14, ¶ 48.

Defendant Mora ordered Plaintiff to turn around and put his hands behind his back. Id. at 12, ¶ 28. Plaintiff advised Defendant Mora that he had a "'special cuffing' restriction chrono" which meant he had to be cuffed in waist chains. Id. Defendant Madsen arrived and whispered in Defendant Mora's ear. Id., ¶ 29. Defendant Mora told Plaintiff, "You'll be alright!" and took Plaintiff's cane. Id. at 12-13, ¶¶ 31, 32. Defendant Madsen told Mora, "Oliver is an asshole and like[s] to write 602s (grievances) against us." Id., ¶ 33. As Defendant Mora escorted Plaintiff out of G-Wing, Plaintiff cried out about "experiencing excruciating pain in his shoulder and across his upper shoulders." Id., ¶ 34.

---

[1] Plaintiff alleges various instances of misconduct by Defendants against other inmates. Dkt. No. 26 at 10-12. Defendants move to strike these allegations under Rule 12(f).

Defendant Mora stated, "You will be alright we're just going to the Facility Program Office [*sic*]." Id., ¶ 35.  Plaintiff alleges that this distance was approximately the distance of a football field.  Id., ¶ 36.  Plaintiff had difficulty walking without his cane and had to stop three to four times.  Id., ¶ 37.  Although Plaintiff was wearing his ADA vest, Defendants Mora and Madsen refused to call for an ADA wheelchair.  Id., ¶¶ 38, 39.  Plaintiff claims Defendants Madsen and Mora were aware of his housing and cuffing restrictions based on past encounters, as well as his shoulder and back injuries of which he had made them aware during numerous clothed body searches.  Id. at 13-14, ¶ 41, 42.

Once they arrived, Defendant Mora placed Plaintiff in holding cell #4 and refused to tell Plaintiff the reason for placing him in restraints.  Id. at 14, ¶ 42.  Plaintiff was then ordered to strip down naked and hand his clothes and shoes to the officer; he complied.  Id., ¶ 43.  When Plaintiff inquired why he was brought to the holding cell, Officer A. Martinez and Sgt. M. Magallow were unaware of the reason.  Id., ¶¶ 44-46.  A few minutes later, Plaintiff received back his cane and was returned to his wing.  Id., ¶ 47.

Plaintiff claims Defendant Mora conspired with Defendant Madsen to handcuff Plaintiff and then have him walk to the Office, "to intentionally inflict pain to Plaintiff and cause harm to [him] and teach [him] a lesson for filing grievances against Defendants Madsen and Stephens."  Id., ¶ 49.  Plaintiff claims Defendants' actions aggravated his pre-existing shoulder, hip, and left leg injuries, requiring Plaintiff to take pain medication and injections.  Id. at 15, ¶ 50.  He claims Defendants' use of excessive force did not reasonably advance a legitimate correctional goal, and it was "malicious and sadistic and intended to deliberate cause[] harm to Plaintiff."  Id., ¶¶ 51, 52.

Plaintiff claims that his tort claims were filed in the Government Claims Program against Defendants mora and Madsen.  Dkt. No. 26 at 15, ¶ 53.  The claims were rejected, and Plaintiff was advised that no determination was made regarding the merits of the claims which involved complex issues best determined by the courts.  Id. at 15-16, ¶ 53.

## II. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Dismissal for failure to state a claim is a ruling on a question of law. See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. See Symington, 51 F.3d at 1484. The court may consider "'allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…. Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." Id. at 570. To state a claim that is plausible on its face, a plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (finding under Twombly and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a Bivens action failed to plead sufficient facts "plausibly

6

showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations).  From these decisions, the following "two principles" arise: "First to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011); see, e.g., AE v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (applying Starr standard to pleading policy or custom for claims against local government entities); see also McHenry v. Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (a complaint must make clear "who is being sued, for what relief, and on what theory, with enough detail to guide discovery").

A pro se pleading must be liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  The Supreme Court reminded us in Twombly and has reminded us since.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Because Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings, we continue to construe pro se filings liberally, especially where the plaintiff is a pro se prisoner in a civil rights matter.  See Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party.  See Symington, 51 F.3d at 1484.

### A. Retaliation

Defendants first assert that qualified immunity protects Defendant Stephens from Plaintiff's retaliation claim because Plaintiff's assistance of another inmate to file a grievance cannot support such a claim.  Dkt. No. 38 at 14.  Plaintiff states that he does not oppose the motion to dismiss this claim against Defendant Stephens.  Dkt. No. 42 at 2.

Defendants assert in reply that the claim should be dismissed. Dkt. No. 43 at 2.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Id. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by Saucier). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. Id. at 236 (noting that while the Saucier sequence is often appropriate and beneficial, it is no longer mandatory). When qualified immunity is raised in a motion to dismiss, a court must decide "whether the facts alleged in the complaint, assumed to be true, yield the conclusion that the defendant is entitled to immunity." Butler v. San Diego District Attorney's Office, 370 F.3d 956, 962-63 (9th Cir. 2004).

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Carroll v. Carman, 574 U.S. 13, 16 (2014) (citations omitted) (law not clearly established whether officer may conduct a 'knock and talk' at any entrance to a home that is open to visitors, rather than only the front door); accord Browning v. Vernon, 44 F.3d 818, 823 (9th Cir. 1995) ("the contours of the right must be sufficiently clear so

8

that a reasonable official would know that his conduct violates that right"). Ultimately, however, the dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202. A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." Community House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 967 (9th Cir. 2010) (citing Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. See id.

After carefully reviewing the papers, the Court finds that Defendant Stephens is entitled to qualified immunity on the retaliation claim against him. Assuming Defendant Stephens did retaliate against Plaintiff for assisting another inmate to file a grievance, it cannot be said that it would have been clear to a reasonable officer that such conduct was unlawful. Prisoners do not have a special right to provide inmates with legal advice or assistance, cloaked with enhanced First Amendment protection; such speech may be regulated in the same manner as other inmate speech may be regulated under the Turner[2] standard. Shaw v. Murphy, 532 U.S. 223, 231 (2001); see also Gibbs v. Hopkins, 10 F.3d 373, 378 (6th Cir. 1993) (decision noted in Shaw, 532 U.S. at 227-28); Gassler v. Rayl, 862 F.2d 706, 707-08 (8th Cir. 1988) (decision noted in Shaw, 532 U.S. at 228). Prisons have legitimate penological reasons for discouraging or prohibiting jailhouse lawyering because "it is indisputable that inmate law clerks are sometimes a menace to prison discipline and that prisoners have an acknowledged propensity to abuse both the giving and the seeking of legal advice." Shaw, 532 U.S. at 231 (internal quotation marks, ellipsis and brackets omitted). In light this precedent and the legitimate concerns it acknowledges, it cannot be said that there existed a clearly established right for prisoners to assist other

---

[2] Turner v. Safley, 482 U.S. 78, 89 (1987) (prison regulations that infringe a prisoner's constitutional right are valid so long as they are "reasonably related to legitimate penological interests").

prisoners in exercising their First Amendment rights without retaliation such that a reasonable officer would have understood that he was violating that right in the circumstances faced by Defendant Stephens. See Saucier, 533 U.S. at 202.

Based on the foregoing, Defendant Stephens is entitled to qualified immunity on this claim because a reasonable officer in her position would have not been on notice of clearly established law holding that Plaintiff could not be retaliated against for assisting another inmate in filing grievances. Accordingly, Defendants' motion to dismiss this claim based on qualified immunity should be granted. It is therefore unnecessary to address Defendants' alternative argument that Plaintiff fails to state a retaliation claim because his allegations are insufficient. Dkt. No. 38 at 15-20.

### B. State Law Claims

Defendants assert that Plaintiff's state law claims for negligence and negligent infliction of emotional distress against Defendants Mora and Madsen based on their conduct during their escort of Plaintiff to the holding cell are barred for failure to comply with the Government Claims Act. Dkt. No. 38 at 20. In support, Defendants submit the declaration of the Government Claims Program Custodian of Records, A. Ramos, who states that Plaintiff never submitted a government claim related to the alleged events on September 7, 2019. Dkt. No. 38 at 21; Dkt. No. 38-2 at 2. In opposition, Plaintiff contends that he did present his claims to the Government Claims Program and submits evidence in support. Dkt. No. 42. In reply, Defendants assert that Plaintiff's declaration and exhibits are outside the pleadings and constitute extrinsic evidence which should be excluded. Dkt. No. 43 at 2. Even if the Court were to consider the evidence, Defendants assert that the evidence demonstrates that Plaintiff failed to timely file his initial complaint within the six-month statute of limitations from the date his alleged government claim was rejected. Id. at 3.

Assuming that Plaintiff's evidence in opposition is admissible, the evidence clearly shows that he failed to timely file suit under state law. California Government Code section 945.6(a)(1) provides, in relevant part, "any suit brought against a public entity on a

10

cause of action for which a claim is required to be presented… must be commenced… not later than six months after the date such [written] notice is personal delivered or deposited in the mail." Cal. Gov't Code § 945.6(a); see also Bladen v. CDCR, et al., Case No. 5"20-cv-0878-DSF (GJS), 2021 WL 6751909, at *3 (C.D. Cal. Nov. 30, 2021). This six-month statute of limitations is not tolled for an additional six months under section 945.6(b) by virtue of a plaintiff's imprisonment. See Moore v. Twomey, 120Cal.App.4th 91, 914, n.2 (2004). It appears that Plaintiff may have submitted a government claim with the wrong incident date (September 21, 2019), (Dkt. No. 42 at 10), which accounts for the discrepancy with the Custodian of Records' declaration that no claim was located regarding a September 7, 2019 incident. Dkt. No. 38-2 at 2. This discrepancy is ultimately immaterial because Plaintiff's evidence, taken as true, indicates that he failed to timely file his complaint within six months of the rejection of the government claim. Plaintiff states that the government claim was rejected on March 23, 2020. Dkt. No. 42 at 3, 6. That same rejection notice advised Plaintiff that he "had six (6) months to file a court action from the date of that notice." Id. at 23. That means Plaintiff had until September 23, 2020, to file at timely action. However, Plaintiff did not initiate this action until several months after the limitations period had already expired: the verification was signed on December 25, 2020, which was three months after the limitations period expired, Dkt. No. 1 at 33-34, and the complaint was received on January 25, 2021, another month later, Dkt. No. 182 at 1. Accordingly, these state law claims are barred as untimely and must be dismissed.

### III. Motion to Strike

Defendants assert that Plaintiff's allegations under paragraph 27 of the SAC involving other inmates and the attached Exhibits E-H containing confidential grievances, grievance decisions, and a declaration from an inmate in another inmate's case should be stricken from the SAC under Federal Rule of Civil Procedure 12(f) as immaterial and scandalous. Dkt. No. 38 at 21. Defendants rely on sections 3370(b) and 3450(e) of Title 15, which prohibit an inmate from possessing another inmate's personal or confidential

11

material.  Id. at 21-22.  Plaintiff does not oppose the motion.  Dkt. No. 42 at 2.

The Court finds that the challenged material involving the confidential claims of other inmates is clearly immaterial to Plaintiff's remaining Eighth Amendment claim against Defendants Mora and Madsen for the alleged use of excessive force on September 7, 2019.  Accordingly, the Court finds Defendants' motion to strike these portions from the SAC should be granted.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.   Defendants' motion to dismiss the retaliation claim against Defendant Stephens and the state law claims against Defendants Mora and Madsen is **GRANTED**.  Dkt. No. 38.  The retaliation claim against Defendant Stephens is **DISMISSED with prejudice** as barred by qualified immunity.  The state law claims of negligence and negligent infliction of emotion distress are **DISMISSED with prejudice** as time barred.

Defendants' motion to strike paragraph 27 and Exhibits E-H of the SAC is **GRANTED**.

This matter shall proceed on the remaining Eighth Amendment claim for excessive force against Defendants Mora and Madsen.  The Clerk shall terminate all other Defendants from this action because there remain no claims against them.

2.   **No later than fifty-six (56) days from the date this order is filed**, Defendants shall file a motion for summary judgment or other dispositive motion on the remaining claim or file notice indicating that the Eighth Amendment claim against them cannot be resolved by such a motion.

**In the alternative,** if the parties are amenable to settlement proceedings on this remaining claim, they may file a stipulation for a referral to the Pro Se Prisoner Settlement Program **no later than twenty-eight (28) days** from the date this order is filed.

3.   Plaintiff's opposition to Defendants' summary judgment motion shall be filed with the Court and served on Defendants **no later than twenty-eight (28) days** from

the date Defendants' motion is filed.

    4.    Defendants <u>shall</u> file a reply **no later than fourteen (14) days** after the date on which Plaintiff's opposition is filed.

    5.    All other relevant portions of the Court's Order of Service, ECF No. 10, shall remain in effect.

This order terminates Docket No. 38.

**IT IS SO ORDERED.**

DATED:  March 29, 2024

_____
EDWARD J. DAVILA
United States District Judge

13